Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Richard M. Schreiber*
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
rschreiber@mybackwages.com

*Pro hac vice application forthcoming*

*Attorneys for Davis and the Hourly Employees*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LAWRENCE DAVIS, Individually and On Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TIMBERLINE DRILLING, INCORPORATED, <br><br> Defendant. | Case No. _____ <br><br> **ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> (1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*); <br><br> (2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016); <br><br> (3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution; and <br><br> (4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018). |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

- 1 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

## SUMMARY

1.      Lawrence Davis (Davis) brings this class and collective action to recover unpaid wages and other damages from Timberline Drilling Incorporated (Timberline) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2.      Timberline employed Davis as one of its Hourly Employees (defined below).

3.      Timberline pays Davis and the other Hourly Employees by the hour.

4.      Davis and the other Hourly Employees regularly work more than 40 hours a workweek.

5.      However, Timberline does not pay Davis and the other Hourly Employees for all their hours worked, including overtime hours.

6.      Rather, Timberline requires Davis and the other Hourly Employees suit out in protective clothing and safety gear fundamentally necessary to safely perform their job duties and gather tools and other equipment fundamentally necessary to performing their job duties, "off the clock" prior to the start of their shifts.

7.      Likewise, Timberline requires Davis and the other Hourly Employees to change out of and store their safety gear and protective clothing, and store their tools and equipment, "off the clock" following the end of their shifts (¶¶ 6 and 7 collectively Timberline's "pre/post shift off the clock policy").

8.      But Timberline does not pay Davis and the other Hourly Employees for this time before and after their shifts.

9.      Timberline's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Davis and the other Hourly Employees of wages, including overtime wages, for all hours worked.

10.      Likewise, Timberline's pre/post shift off the clock policy violates Nevada Law by depriving Davis and other Hourly Employees of timely payment of earned wages for all hours worked upon termination of their employment.

11.     In addition to failing to pay Davis and the other Hourly Employees for all their hours worked, Timberline also fails to pay them overtime at the required premium rates.

12.     Instead, Timberline pays them non-discretionary bonuses calculated based on factors established by Timberline, including production and safety, in combination with the number of hours worked by each Hourly Employee(Timberline's "bonus pay scheme").

13.     Additionally, Timberline pays Davis and the other Hourly Employees "per diems," but only for days worked, which Timberline fails to include in their regular rates of pay for overtime purposes (Timberline's "per diem pay scheme").

14.     Timberline's bonus pay scheme and per diem pay scheme violate the FLSA and Nevada law by depriving Davis and the other Hourly Employees of overtime at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek.

15.     Likewise, Timberline's bonus pay scheme and per diem pay scheme violate Nevada law by depriving Davis and the other Hourly Employees of timely payment of earned wages for all hours worked, including overtime hours, upon termination of their employment.

## JURISDICTION & VENUE

16.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Timberline based on its substantial contacts with and business done in Nevada, including registering to do business in Nevada and employing Davis and other Hourly Employees in Nevada.

19.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in Nevada, which is located in this District. *See* 28 U.S.C. § 1391(b)(2).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

## PARTIES

20.     Timberline employed Davis as a driller assistant at its client's Granite Creek Mine near Winnemucca, Nevada, from approximately April 2023 until November 2023.

21.     Timberline classified Davis as non-exempt and paid him by the hour.

22.     Timberline subjected Davis to its pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme throughout his employment.

23.     Davis's written consent is attached as **Exhibit 1**.

24.     Davis brings this class and collective action on behalf of himself and other similarly situated Timberline employees who were also subject to Timberline's pre/post shift off the clock policy, bonus pay scheme, and/or per diem pay scheme.

25.     The FLSA collective of similarly situated employees is defined as:

> **All hourly Timberline employees during the past 3 years through final resolution of this action ("FLSA Collective Members").**

26.     Davis also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

27.     The Nevada class of similarly situated employees is defined as:

> **All hourly Timberline employees in Nevada during the past 4 years through final resolution of this action ("Nevada Class Members").**

28.     The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

29.     Timberline is an Idaho corporation.

30.     Timberline may be served with process by serving its registered agent: **C T Corporation System, 701 S. Carson St., Ste. 200, Carson City, Nevada 89701**.

## FLSA COVERAGE

31.     At all relevant times, Timberline has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

32.     At all relevant times, Timberline has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33.     At all relevant times, Timberline has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, drills, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

34.     At all relevant times, Timberline has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

35.     At all relevant times, Davis and the other Hourly Employees have been Timberline's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

36.     At all relevant times, Davis and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

### FACTS

37.     Timberline operates "field offices in key mining hubs of Elko, Nevada, and Virginia, Minnesota," and touts itself "[a]s a leading underground and surface core drilling contractor … known for delivering high-quality core samples" by utilizing its "fleet of 85 drill rigs and more than 300 dedicated employees."[1]

38.     To meet its business objectives, Timberline hires workers, like Davis and the other Hourly Employees.

39.     While exact job titles and duties may differ, Davis and the other Hourly Employees are all subject to Timberline's same or similar illegal policies—its pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme—while performing similar work.

40.     For example, Timberline employed Davis as a driller assistant from approximately April 2023 until November 2023.

---

[1] https://timberline-drilling.com/ *and* https://timberline-drilling.com/about/ (last visited July 8, 2025).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

41.     As a driller assistant, Davis's job duties included operating drilling equipment, fixing the drill rig, ensuring machines operated smoothly, maintaining compliance with safe operating guidelines, boxing and breaking cores, and moving hoses out of sumps.

42.     Davis's job duties likewise included donning and doffing safety gear and protective clothing, and gathering and storing tools and equipment, "off the clock," before and after his scheduled shifts.

43.     Timberline paid Davis by the hour.

44.     Timberline paid Davis approximately $18 an hour.

45.     Throughout his employment, Davis worked 5 to 7 days a week for approximately 12 hours a day "on the clock" (60 to 84 hours a week) for 20 days on followed by 10 days off.

46.     Davis worked in 60+ hours during at least two workweeks during each 20 day "on" period during his employment.

47.     Likewise, the other Hourly Employees generally work approximately 5 to 7 days a week for approximately 12 hours a day "on the clock" (60 to 84 hours a week) for 20 days on followed by 10 days off.

48.     Timberline records Davis's and the other Hourly Employees' "on the clock" hours using its designated timekeeping system.

49.     But throughout their employment, Timberline has not paid Davis and the other Hourly Employees for all their compensable hours worked.

50.     Instead, Timberline subjects Davis and the other Hourly Employees to its pre/post shift off the clock policy.

51.     For example, Timberline requires Davis to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective and fire retardant clothing, ear protection, steel toed boots, safety glasses, gloves, self-contained self-rescuer, dust masks), and gather tools and equipment necessary to performing his job, prior to his shifts, on Timberline's client's premises, "off the clock," and without compensation.

- 6 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

52.     This took Davis approximately 30 to 45 minutes each workday.

53.     Davis could not perform his job duties in accordance with Timberline's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

54.     Davis could not safely perform his job duties in accordance with Timberline's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

55.     Indeed, much of the safety gear Davis must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

56.     The donning of protective clothing and safety gear and gathering of tools and equipment are integral and indispensable work duties for Davis because these job duties are fundamentally intertwined with his other drilling job duties.

57.     Likewise, Timberline required Davis to remove and store his safety gear and protective clothing, and store his tools and equipment, after his shifts, "off the clock" and without compensation.

58.     This took Davis approximately 30 to 45 minutes each workday.

59.     Davis could not perform his job duties in accordance with Timberline's policies, procedures, and expectations without removing and storing his safety gear and protective clothing and storing his tools and equipment.

60.     Davis could not safely perform his job duties in accordance with Timberline's policies, procedures, and expectations without removing his safety gear and storing his tools and equipment each day.

61.     The removal, inspecting, and storage of his safety gear and protective clothing, as well as tools and equipment, are therefore integral and indispensable work duties for Davis intertwined with his broader drilling job duties.

62.     But under its pre/post shift off the clock policy, Timberline does not compensate Davis for the same.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

63. Thus, because of its pre/post shift off the clock policy, Timberline fails to pay Davis wages for all hours worked, including overtime wages for all overtime hours worked, in violation of the FLSA and Nevada Law.

64. Davis and the other Hourly Employees perform their jobs under Timberline's supervision and use materials, equipment, and technology Timberline approves and supplies.

65. Timberline requires Davis and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

66. At the end of each pay period, Davis and the other Hourly Employees receive wages from Timberline that are determined by common systems and methods that Timberline selects and controls.

67. But, just as with Davis, Timberline fails to pay the other Hourly Employees for all their hours worked.

68. Indeed, Timberline subjects the other Hourly Employees to its pre/post shift off the clock policy.

69. Specifically, like Davis, Timberline requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective and fire retardant clothing, ear protection, steel toed boots, safety glasses, gloves, self-contained self-rescuer, dust masks), and gather other tools and equipment fundamentally necessary to performing their jobs, prior to their scheduled shifts, on Timberline's client's premises, "off the clock."

70. As with Davis, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

71. And Timberline requires the other Hourly Employees to remove and store their safety gear and protective clothing and other tools and equipment, after their shifts, "off the clock."

72. And, just as with Davis, Timberline does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

73.    And like Davis, these job duties take the other Hourly Employees approximately an hour to an hour and a half each workday.

74.    Timberline fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its (or its client's) premises that Timberline does not want performed.

75.    And Timberline knows, should know, or recklessly disregards whether Davis and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

76.    Thus, Timberline requires, requests, suffers, or permits Davis and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

77.    Despite accepting the benefits, Timberline does not pay Davis and the other Hourly Employees for the compensable work.

78.    Thus, under Timberline's pre/post shift off the clock policy, Davis and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.

79.    Further Timberline pays Davis and the other Hourly Employees according to its bonus pay scheme.

80.    Specifically, Timberline agreed to pay, and indeed, subsequently pays Davis and the other Hourly Employees non-discretionary bonuses calculated based on several factors, including safety and productivity and hours worked, that Timberline selected, in combination with the number of hours worked by each Hourly Employee.

81.    But Timberline failed to include these bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime wages.

82.    Thus, Timberline fails to pay Davis and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

83.     Additionally, Timberline pays Davis and the other Hourly Employees under its per diem pay scheme.

84.     Specifically, under its per diem pay scheme, Timberline pays Davis and the other Hourly Employees "per diems" but only for days worked and unrelated to any expenses incurred.

85.     And Timberline fails to include these "per diems" in Davis's and the other Hourly Employees' regular rates of pay for overtime purposes.

86.     Thus, Timberline fails to pay Davis and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

CLASS & COLLECTIVE ACTION ALLEGATIONS

87.     Davis brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to FED. R. CIV. P. 23.

88.     Like Davis, the other Hourly Employees are victimized by Timberline's pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme.

89.     Other Hourly Employees worked with Davis and indicated they were paid in the same manner, performed similar work, and were subject to Timberline's same pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme.

90.     Based on his experiences with Timberline, Davis is aware Timberline's pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme were imposed on other Hourly Employees.

91.     The Hourly Employees are similarly situated in the most relevant respects.

92.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

93.     Rather, the Hourly Employees are held together by Timberline's pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme, which systematically deprive Davis and

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

the other Hourly Employees of required wages, including required overtime wages, for all hours worked, including hours in excess of 40 hours in a workweek.

94.    Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

95.    Timberline's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

96.    The Hourly Employees are denied wages and overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

97.    Timberline's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

98.    The back wages owed to Davis and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

99.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Timberline's records, and there is no detraction from the common nucleus of liability facts.

100.    Therefore, the issue of damages does not preclude class or collective treatment.

101.    Davis's experiences are therefore typical of the experiences of the other Hourly Employees.

102.    Davis has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

103.    Like each Hourly Employee, Davis has an interest in obtaining the unpaid wages owed under federal and Nevada law.

104.    Davis and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

105.    Davis retained counsel with significant experience in complex class and collective action litigation.

106.    A class and collective action is superior to other available means for fair and efficient adjudication of this action.

107.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Timberline will reap the unjust benefits of violating the FLSA and Nevada law.

108.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

109.    Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Timberline.

110.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

111.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

112.    Among the common questions of law and fact are:

    a.    Whether Timberline's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

    b.    Whether Timberline's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

    c.    Whether Timberline paid the Hourly Employees non-discretionary bonuses and/or "per diems";

    d.    Whether Timberline failed to include non-discretionary bonuses and/or per diems in calculating the Hourly Employees' regular rates of pay;

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

e.      Whether Timberline failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

f.      Whether Timberline's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith;

g.      Whether Timberline's pre/post shift off the clock policy, bonus pay scheme, and/or per diem pay scheme deprived the Hourly Employees of earned wages, including overtime wages, upon termination of employment; and

h.      Whether Timberline's violations were willful?

113.    Timberline's pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme deprived Davis and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

114.    There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

115.    The Hourly Employees are known to Timberline and can be readily identified and located through Timberline's business and personnel records.

**TIMBERLINE'S VIOLATIONS WERE WILLFUL**

116.    Timberline knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

117.    Timberline knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

118.    Timberline knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

119.    Timberline knew it paid its Hourly Employees according to its pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme.

120.    Timberline knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

121.    Timberline knew it required the Hourly Employees to don and doff safety gear and protective clothing and gather and store necessary tools and equipment "off the clock."

122.    Timberline knew it controlled the Hourly Employees' work procedures.

123.    Timberline knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

124.    Timberline knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

125.    Timberline knew its Hourly Employees routinely performed this daily, required "off the clock" work for Timberline's benefit.

126.    In other words, Timberline knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing and gathering and storing tools and equipment) "off the clock" and without compensation.

127.    Timberline knew its pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours, at the required rates.

128.    Timberline knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

129.    Timberline knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme that systematically deprived

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

the Hourly Employees of "straight time" wages, earned wages, and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

**COUNT I**

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

130.    Davis bring his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

131.    Timberline violated, and is violating, the FLSA by employing non-exempt employees (Davis and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

132.    Timberline's unlawful conduct harmed Davis and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

133.    Accordingly, Timberline owes Davis and the other FLSA Collective Members the difference between the rate actually paid and the required overtime rate based on all remuneration.

134.    Because Timberline knew, or showed reckless disregard for whether, its pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme violated the FLSA, Timberline owes Davis and the other FLSA Collective Members these wages for at least the past 3 years.

135.    Timberline is also liable to Davis and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

136.    Finally, Davis and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

**COUNT II**

**FAILURE TO PAY FOR ALL HOURS WORKED**
**(NEVADA CLASS MEMBERS)**

137.    Davis brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV P 23.

- 15 -

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

138.    Davis has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

139.    At all relevant times, Timberline was subject to Nevada law because Timberline was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

140.    At all relevant times, Timberline employed Davis and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

141.    NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

142.    Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

143.    Timberline failed to compensate Davis and the other Nevada Class Members for all hours worked, as described in this Complaint.

144.    Accordingly, Davis "bring[s] a civil action to recover the difference between the amount paid to [Davis and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

145.    As noted, Timberline did not compensate Davis and the other Nevada Class Members for integral and indispensable work before and after their shifts, performed under Timberline's direction and control and on Timberline's premises.

146.    Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

147.    Davis and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Timberline's company-wide policies and practices.

148.    As a direct and proximate result, Davis and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

149.    Timberline regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Davis and the Nevada Class Members.

150.    Through this unlawful course of conduct, Timberline has deprived and continues to deprive Davis and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

151.    Timberline's actions were (and are) willfully oppressive, fraudulent and malicious, entitling Davis and the Nevada Class Members to punitive damages.

152.    Timberline's violations were intentional.

153.    In accordance with N.R.S. 608.140, demand has been made to Timberline for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

154.    Accordingly, Davis and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

### COUNT III
### FAILURE TO PAY MINIMUM WAGES
### (NEVADA CLASS MEMBERS)

155.    Davis brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV P 23.

156.    Davis has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

157.    At all relevant times, Timberline was subject to Nevada law because Timberline was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

158.    At all relevant times, Timberline employed Davis and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

159.    Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

160.    Accordingly, Davis and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

### COUNT IV
### FAILURE TO PAY OVERTIME WAGES
### (NEVADA CLASS MEMBERS)

161.    Davis brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV P 23.

162.    Davis has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

163.    At all relevant times, Timberline was subject to Nevada law because Timberline was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

164.    At all relevant times, Timberline employed Davis and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

165.    Nevada law requires that employers, such as Timberline, pay employees, such as Davis and the Nevada Class Members at least 1.5 times their regular rate of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

166.    Davis and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Timberline's pre/post shift off the clock policy, bonus pay scheme, and per diem pay scheme.

167.    Timberline regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Davis and the Nevada Class Members.

168.    Through this unlawful course of conduct, Timberline has deprived and continues to deprive Davis and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

169.    Timberline's actions were willfully oppressive, fraudulent and malicious, entitling Davis and the Nevada Class Members to punitive damages.

170.    Timberline's violations were intentional.

171.    In accordance with N.R.S. 608.140, demand has been made to Timberline for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

172.    Accordingly, Davis and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* N.R.S. § 608.005 *et seq.*

### JURY DEMAND

173.    Davis demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Davis, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective

Members allowing them to join this action by filing a written notice of consent;

b.      An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Davis and his counsel to represent the interests of the Hourly Employees;

d.      An Order finding Timberline liable to Davis and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e.      An Order finding Timberline liable to Davis and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f.      A Judgment against Timberline awarding Davis and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g.      An Order awarding attorney's fees, costs, and expenses to the Hourly Employees;

h.      Pre- and post-judgment interest at the highest applicable rates; and

i.      Such other and further relief as may be necessary and appropriate.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

Dated: July 9, 2025.

Respectfully submitted,

**RODRIGUEZ LAW OFFICES, P.C.**

By: */s/ Esther C. Rodriguez*
Esther C. Rodriguez
Nevada State Bar No. 006473
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Richard M. Schreiber*
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
rschreiber@mybackwages.com

*Pro hac vice application forthcoming*

**ATTORNEYS FOR DAVIS &
THE HOURLY EMPLOYEES**

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Davis v. Timberline Drilling, Incorporated*

# EXHIBIT 1

<u>CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT</u>

Print Name: <u>Lawrence Davis</u>

1. I hereby consent to make a claim against <u>Timberline Drilling Inc</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against <u>Timberline Drilling Inc</u>.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: <u>Lawrence Davis (Aug 16, 2024 20:22 PDT)</u>        Date Signed: <u>Aug 16, 2024</u>